Knut S. Johnson (SBN 125725)
kjohnson@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Tel. (619) 771-3473
Fax (619) 255-1515

Marianna Sarkisyan (*Pro Hac Vice*)
msarkisyan@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
1641 N. Downing Street
Denver, CO 80218
Tel. (619) 604-3016
Fax (619) 255-1515

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

MARY-ELIZA SCHMIDT, an individual; AUSTIN WALKER, an individual; SHERYL RENEE DAVIDSON, an individual; and BRUCE F. THOMAS, individually and as Trustee of THE BRUCE THOMAS SN TRUST; CORTNEY AGUILAR, an individual; YOUSEF O. ALBARATI, an individual; MICHELE E. ALCANTARA, an individual; ALEXANDER JULIAN ALCANTARA, III, an individual; ANYSIA ALVARADO, an individual; JILL RAEHEDRICK AMOS, an individual; ANTOINETTE AMSTEIN, an individual; JENNIFER BURROLA, an individual; EVELYN ANDREWS, an individual; LORDES MARIA ARANGO, an individual; MARY JEAN ARNOLD, individually and as Trustee of the MARY JEAN ARNOLD TRUST; THERESE M. AUSTIN, an individual; NICHOLAS ANGEL AYALA, an individual; DANIEL HOSEA BABATUNDE, an individual; MICHELLE ERIN BAKKER, an individual; KIMBERLY ROSE BAPTISTA, an individual; CLINTON ROBERT BARRY, an individual; RACHEL ALEXANDRA BARRY, an individual;

Case No. 4:25-cv-02475-YGR

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. **Strict Liability for Ultrahazardous Activities**
2. **Strict Product Liability**
3. **Inverse Condemnation**
4. **Negligence**
5. **Private Nuisance**
6. **Trespass to Real Property and Chattel**
7. **Civil Battery**

**DEMAND FOR JURY TRIAL**

SABRINA BROOKE BARRYMORE, an individual; MATTHEW D. BAUGHMAN, an individual; MATTHEW R. BAUGHMAN, an individual; JEFF BELT, an individual; MARGARET BERNIER, individually and as Trustee of the MARGARET BERNIER LIVING TRUST; MICHAEL E. BLACK, individually and as Trustee of THE BLACK FAMILY 2000 REVOCABLE TRUST; DANIEL WINSTON BLAKE, an individual; SARAH ALICE BLAKE, an individual; BRUCE BRADLEY BOWLING, an individual; MICHELLE MARIE BOWMAN, an individual; TONYISHA BRADDOCK, an individual; CHRISTOPHER JAMES BROADDUS, an individual; EVAN BRODSKY, an individual; JOHN S. BROOKS, an individual; GEOFF W. BUCKLES, an individual; TIFFANY MOORE, an individual; CHRIS LOUIS BUONOCORE, an individual; CHARLES CAIN, an individual; CHRISTINE M. CAMPOLI-SILVA, an individual; THOMAS SILVA, an individual; ALVINO CASTILLO, an individual; TIFFANY JOLENE WHEELER, an individual; MICHELLE LISA CASTRO, an individual; RICHARD CASTRO, individually and as Trustee of the RICHARD CASTRO AND ALBERT CASTRO LIVING TRUST; CURTIS SCOTT CHAFFEE, an individual; SHELLEY COST CHAFFEE, an individual; CRISTA YUNAH CHANG, an individual; CAMERON STUART CHAO, an individual; CAROLYN M. CHAPERON, an individual; CYNTHIA ANN CHESEBRO, an individual; JOHN ALMANDO CHIOINO, an individual; CARRIE LYNN CHRISTENSEN, an individual; RON V. CLARKE, an individual; MICHELLE LYNNE CLARY, an individual; DANIEL CLIFTON, an individual; WILLIAM COFFEY, an individual; JENNIFER ALBERTI, an individual; CASEY OWEN CONDON, an individual; KRISTINA CONSOLE, an individual; ROBERT NESTLER, an individual; MELINDA J. CONSOLE, individually and as Trustee of the

MELINDA J. CONSOLE TRUST; FABIAN I. CORIA, an individual; JOSUE CORNEJO, an individual; SANDRA ELIZABETH CORNEJO, an individual; DORIS D. CORRELL, an individual; ADELA CORTEZ, an individual; KEVIN CROWLEY, an individual; MARGARET J. CROWLEY, an individual; MICHAEL FRANCIS CROWLEY, individually and as Trustee of the MICHAEL AND PEGGY CROWLEY LIVING TRUST; CHRISTIAN JAMES CUMMING, an individual; EMILY DOREEN DAIGLE, an individual; GIUSEPPE JOSEPH DAVI, an individual; LESLIE ANN DELUCA, an individual; EDWARD BOYD DICKIE, an individual; BRUCE LEE, an individual; ROBERT DOLIVIERA, an individual; LEAH DRAKE, an individual; JEREMIAH DUMFORD, an individual; LISA DUQUE, an individual; PATRICK ANDREW EDDINGTON, an individual; EMMA EDDINGTON, an individual; IRBY ELLISTON, an individual; BRIAN SCOTT ENSLEY, an individual; TIMOTHY J. EPPERSON, an individual; CASEY EDWARD FANEUF, an individual; LAURA RUTH FEISTEL, an individual; LORIN FERGUSON, an individual; SCOTT FERGUSON, an individual; FLORENTINO ROMERO FERNANDEZ, an individual; SUZAN LEE FINE, an individual; ELAINE FISCHER, an individual; NANCY MARIE FLORES, an individual; EZEKIEL FLORO, an individual; LINDSEY ELIZABETH FODEN, an individual; SCOTT ANTHONY FREEMAN, an individual; LESLIE CAROL FRENCH-BAXTER, an individual; JEWEL SEAN YAHUT GENTRY, an individual; WENDY M. GIBBS, an individual; LINDA CAROL GILL, an individual; JOSHUA RAY GOBBELL, an individual; ELIZABETH ANN GOBLIRSCH, individually and as Trustee of THE ELIZABETH ANN GOBLIRSCH LIVING TRUST; ANDREW JONATHAN ASHWORTH, an individual; MARCOS G. GOMEZ LOPEZ, an individual; MICHAEL WARREN GOODE, an individual; SHARON

SUZANNE GREENSTEIN, an individual; BRUCE KEVIN GREENSTEIN, an individual; AARON ALLEN GREGG, individually and as Trustee of THE GREGG FAMILY TRUST; BONNIE J. GREY, an individual; PAUL RESE GRIFFIN, an individual; RAPHAEL ARMANDO GRIJALVA, an individual; MISTY DAWN GRIJALVA, an individual; JAMES ALLEN GULKIN, an individual; LYNN MICHELLE GULKIN, an individual; KAREN KIMBERLY HANLON SONNE, an individual; MICHAEL CHRISTOPHER HELTON, an individual; MARYANN VERONICA HERNANDEZ, an individual; CARMEN AYALA, an individual; THALIA HERNANDEZ, an individual; KAMERON HERRERA, an individual; KATHERINE L. HOLLANDER, an individual; JOHN SOTOMAYOR, an individual; LINDSEY A. SOTOMAYOR, an individual; MARGIE A. HOLLINGSWORTH, an individual; MICHAEL A. FINLEN, SR., an individual; LAURENCE PHILLIP HOLMES, an individual; DARRIN R. HOOVER, an individual; DAVID LLOYD HYLAND, an individual; ALEJANDRO IBARRA, an individual; ALEX DANIEL MICHAEL IBARRA, an individual; ALIAH DANIELLE IBARRA, an individual; DEANNA IBARRA, an individual; JAIME IRACHETA, an individual; ANDRES JACOBO BELLO, an individual; GUADALUPE S. JAIME, an individual; LISA JOANNA JARRETT, an individual; JEFFREY ALAN JELTEN, an individual; MELVIN R. JENKINS, an individual; MAUREEN S. JENKINS, an individual; GREGORY B. JOHNS, an individual; KEOCHAN KATHY JOHNSON, an individual; WILLIAM JOHN JOHNSON, an individual; YVONNE J. JOHNSON, an individual; CHRISTEN SUZANNE JONES, an individual; KARLA KONSTANCE JONES, individually and as Trustee of the JONES FAMILY TRUST; HOLLY ANNE KING, an individual; ALICIA KUHL, an individual; JOSHUA NAY, an individual;

ERIC PRICE, an individual; JENNIFER LAWRENCE, an individual; ANTOINETTE YVONNE LECHTENBERG, an individual; LUCAS P. LITTLE, an individual; REBECCA JO LITTLE, individually and as Trustee of the TOM LITTLE LIVING TRUST; JOSEPHINE LOMBARDO, an individual; BELLA LUCIDO, an individual; GAETANO LUCIDO, an individual; MARIA LISA LUCIDO, an individual; PAOLO LUCIDO, an individual; MARYANNE LOMBARDO, an individual; FRANK V. LOMBARDO, an individual; VALENTINA MARIA LOMBARDO, an individual; VITTORIO ANTHONY LOMBARDO, an individual; REBECCA G. LOMELI, an individual; ANTHONY LOPEZ, an individual; RUBEN LOPEZ, an individual; CATHERINE LOUISE, an individual; MARIA R. LOYOLA, individually and as Trustee of the LOYOLA FAMILY TRUST; MARILYN LYNDS, an individual; JAMES DISMUKES, an individual; GINA LOUISE MACIAS, an individual; LINDIE L. MALLORY, an individual; STEPHANIE DIANE MANGUS, an individual; LAWRENCE E. MANN, an individual; CATHERINE GRACE MARTIN, an individual; GABRIEL MARTINEZ, an individual; MANUEL RICHARD MARTINEZ, an individual; MARIA MERCEDES MARTINEZ, an individual; ROBERTO MARTINEZ, an individual; JENNIFER McCAHAN-FORD, an individual; JENNIFER KAY McCANN, an individual; MARCIE JO McKEARN, an individual; YESENIA MEDINA, an individual; PAUL BRANDEIS MELTZER, an individual; STEPHEN JOSEPH MENDES, an individual; DENISE MERCADO, an individual; GWENDOLYN M. MEYER, an individual; MICHAELA BARBARA MILLER, an individual; VICTORIA TORI MITCHELL, an individual; ANTHONY ANDREW MITHCELL, an individual; DALTON ANDREW MITCHELL, an individual; JANIKA MARLINA MOHAN, an individual; DEBRA ANN MONTANEZ, an individual;

ALEX S. MORALES, an individual; SOCRRO S. MORALES, an individual; RAMON MORENO, an individual; CATE MULLIGAN, an individual; CARLOS EFREN MUÑOZ, an individual; MICAH T. MURPHY, an individual; EIREENE NEALAND, an individual; LOIS NIEUWSTAD, an individual; RICHARD OLER, an individual; AUGUST ARTHUR ORANGE, an individual; STEVEN SORIA ORNELAS, an individual; HUGH EDWARD PAINTER, an individual; DEREN PAINTER, an individual; MARIA MAGDALE GUEHASSE, an individual; ANTHONY KYLE LUKE, an individual; EMMANUEL DEREK MILLER, an individual; KATHEY OWENS, an individual; JANE RAYE PARKS-McKAY, an individual; RICHARD CHRISTOPHER PARRA, an individual; SKY SHAWN PAXTON, an individual; BEVERLY PAXTON, an individual; RONALD ITALO PELISSIER, an individual; KELLY PLESKUNAS, an individual; STANLEY PLESKUNAS, an individual; KENNETH SCOTT POLLARD, an individual; LAUREN E. RHODY, an individual; KEVIN AUBREY PRICE, an individual; ANTONIA CORTES RAMIREZ, an individual; JOSHUA BOWMAN, an individual; LARA KAY RANKIN, an individual; LISA RHODES, an individual; ERICA K. RILEY and RICHARD R. RILEY, individually and as Trustees of THE ESTATE OF RICHARD AND ERICA RILEY; SALVADOR VENEGAS MARTINEZ, an individual; LINDA RIVAS, an individual; ALEJANDRO RIVERA, an individual; FRANK RODRIGUEZ, an individual; KEITH L. RODRIGUEZ, an individual; AMBER HEATHER MARIE RONE, an individual; PAULINE JACOBS ROSENTHAL, an individual; ANTHONY J. RUSSO, an individual; CHRIS MICHAEL RUTLEDGE, an individual; LAURIE SAGE, an individual; MELISSA SALAZAR, an individual; REBECCA SALAZAR, an individual; REYNALDO SALAZAR, an individual; MARTHA ALICIA SALDIVAR,

an individual; MARIBELL S. SALINAS, an individual; JAMES SALISBURY, an individual; STARLETTE SANCHEZ, an individual; BARBARA SERENA SANCHEZ, an individual; CELIA SANCHEZ MAYES, an individual; SARAH JANE TOTEMOFF, an individual; DOUGLAS SANDERSON, an individual; NATALIE SANDERSON, an individual; JENNIFER IRENE WILLIAMSON, an individual; JACOB D. SANDERSON, an individual; JESSE ANTHONY SANDOVAL, an individual; JOHN DAVID SAVAGE, an individual; EMILY DAIGLE, an individual; EVA D. SCRUGGS, an individual; ALISON KATHLEEN SHANKLIN POZO, an individual; JUAN CARLOS POZO BLOCK, an individual; LISA R. SHIRK, an individual; MARK A. SHIRK, an individual; AURORE SIBLEY, an individual; ORION SIBLEY, an individual; RICHARD F. SORIA, individually and as Trustee of the RICHARD SORIA TRUST; KATHRYN ALEXIS STERN, an individual; BARBARA J. STOIK, an individual; KEVIN ELLIOTT GROSS, an individual; NIKKI LYNN STOKE, an individual; RONALD EARL SWIM, individually and as Trustee of THE RONALD AND NAM SWIM REVOCABLE LIVING TRUST; CRYSTAL VIOLET SWITZER, an individual; TIMOTHY YEARLEY, an individual; MIRIAM N. TAYLOR, an individual; PATRICIA M. THOMPSON, an individual; WILLIAM COLLINS, an individual; STEPHANY LOUISE THOMPSON, an individual; MONIKE TONE, an individual; MYRA NAVARETTE, an individual; ROBERT FRANK TORRES, an individual; PATRICIA K. TRAYER, individually and as Trustee of THE JP AND PK TRAYER FAMILY TRUST OF 1992; YUSVIVIA ESPANTOJA TREJO, an individual; KATHLEEN UCINSKI, an individual; PATRICIA VALDEZ, an individual; DAVID GUITIERREZ VARGAS, an individual; PAULA VASQUEZ, an individual; ZERRA RHAE VAUGHAN, an

individual; SANDY ERICA VELA, an individual; JOHN ALLEN VINSKY, an individual; HAYLEY VICTORIA WALKER, an individual; KIRK ADAM WALLIS, an individual; DANIELLE RENAY WALLIS, an individual; MATTHEW WEICBERGER, an individual; DEVELYN LOREAL WILHELM, an individual; DUQUE F. WILLIAMS, an individual; ERICA D. WILLIAMS, an individual; PHILIP SCOTT WILLIS, an individual; STEPHEN DALE WILLIS, an individual; JEFFREY L. WOOD, an individual; JENNIFER RUTH WRENNE, an individual; MERCY GRACE WRIGHT, an individual; RUSSELL WILLIAM CONSTABLE, an individual; and RAMONA ZARATE, an individual;

Plaintiffs,

v.

MOSS LANDING POWER COMPANY, LLC, a Delaware limited liability company; MOSS LANDING ENERGY STORAGE 3, LLC, a Delaware limited liability company; VISTRA CORP., a Delaware corporation; DYNEGY OPERATING COMPANY, a Texas corporation; VISTRA CORPORATE SERVICES COMPANY, a Texas corporation; GRANITE CONSTRUCTION COMPANY, a California corporation; LG ENERGY SOLUTION, LTD., a South Korean company; LG ENERGY SOLUTION ARIZONA, INC., a Delaware stock corporation; LG ENERGY SOLUTION MICHIGAN, INC., a Delaware corporation; LG ENERGY SOLUTION VERTECH, INC., a Delaware corporation; PACIFIC GAS AND ELECTRIC COMPANY, a California corporation; and DOES 1 through 50, inclusive,

Defendants.

COME NOW PLAINTIFFS, MARY-ELIZA SCHMIDT, an individual; AUSTIN WALKER, an individual; SHERYL RENEE DAVIDSON, an individual; and BRUCE F. THOMAS, individually and as Trustee of THE BRUCE THOMAS SN TRUST; CORTNEY AGUILAR, an individual; YOUSEF O. ALBARATI, an individual; MICHELE E. ALCANTARA, an individual; ALEXANDER JULIAN ALCANTARA, III, an individual; ANYSIA ALVARADO, an individual; JILL RAEHEDRICK AMOS, an individual; ANTOINETTE AMSTEIN, an individual; JENNIFER BURROLA, an individual; EVELYN ANDREWS, an individual; LORDES MARIA ARANGO, an individual; MARY JEAN ARNOLD, individually and as Trustee of the MARY JEAN ARNOLD TRUST; THERESE M. AUSTIN, an individual; NICHOLAS ANGEL AYALA, an individual; DANIEL HOSEA BABATUNDE, an individual; MICHELLE ERIN BAKKER, an individual; KIMBERLY ROSE BAPTISTA, an individual; CLINTON ROBERT BARRY, an individual; RACHEL ALEXANDRA BARRY, an individual; SABRINA BROOKE BARRYMORE, an individual; MATTHEW D. BAUGHMAN, an individual; MATTHEW R. BAUGHMAN, an individual; JEFF BELT, an individual; MARGARET BERNIER, individually and as Trustee of the MARGARET BERNIER LIVING TRUST; MICHAEL E. BLACK, individually and as Trustee of THE BLACK FAMILY 2000 REVOCABLE TRUST; DANIEL WINSTON BLAKE, an individual; SARAH ALICE BLAKE, an individual; BRUCE BRADLEY BOWLING, an individual; MICHELLE MARIE BOWMAN, an individual; TONYISHA BRADDOCK, an individual; CHRISTOPHER JAMES BROADDUS, an individual; EVAN BRODSKY, an individual; JOHN S. BROOKS, an individual; GEOFF W. BUCKLES, an individual; TIFFANY MOORE, an individual; CHRIS LOUIS BUONOCORE, an individual; CHARLES CAIN, an individual; CHRISTINE M. CAMPOLI-SILVA, an individual; THOMAS SILVA, an individual; ALVINO CASTILLO, an individual; TIFFANY JOLENE WHEELER, an individual; MICHELLE LISA CASTRO, an individual; RICHARD CASTRO, individually and as Trustee of the RICHARD CASTRO AND ALBERT CASTRO LIVING TRUST; CURTIS SCOTT CHAFFEE, an individual; SHELLEY COST CHAFFEE, an individual; CRISTA YUNAH CHANG, an individual; CAMERON STUART CHAO, an individual; CAROLYN M. CHAPERON, an individual; CYNTHIA ANN

CHESEBRO, an individual; JOHN ALMANDO CHIOINO, an individual; CARRIE LYNN CHRISTENSEN, an individual; RON V. CLARKE, an individual; MICHELLE LYNNE CLARY, an individual; DANIEL CLIFTON, an individual; WILLIAM COFFEY, an individual; JENNIFER ALBERTI, an individual; CASEY OWEN CONDON, an individual; KRISTINA CONSOLE, an individual; ROBERT NESTLER, an individual; MELINDA J. CONSOLE, individually and as Trustee of the MELINDA J. CONSOLE TRUST; FABIAN I. CORIA, an individual; JOSUE CORNEJO, an individual; SANDRA ELIZABETH CORNEJO, an individual; DORIS D. CORRELL, an individual; ADELA CORTEZ, an individual; KEVIN CROWLEY, an individual; MARGARET J. CROWLEY, an individual; MICHAEL FRANCIS CROWLEY, individually and as Trustee of the MICHAEL AND PEGGY CROWLEY LIVING TRUST; CHRISTIAN JAMES CUMMING, an individual; EMILY DOREEN DAIGLE, an individual; GIUSEPPE JOSEPH DAVI, an individual; LESLIE ANN DELUCA, an individual; EDWARD BOYD DICKIE, an individual; BRUCE LEE, an individual; ROBERT DOLIVIERA, an individual; LEAH DRAKE, an individual; JEREMIAH DUMFORD, an individual; LISA DUQUE, an individual; PATRICK ANDREW EDDINGTON, an individual; EMMA EDDINGTON, an individual; IRBY ELLISTON, an individual; BRIAN SCOTT ENSLEY, an individual; TIMOTHY J. EPPERSON, an individual; CASEY EDWARD FANEUF, an individual; LAURA RUTH FEISTEL, an individual; LORIN FERGUSON, an individual; SCOTT FERGUSON, an individual; FLORENTINO ROMERO FERNANDEZ, an individual; SUZAN LEE FINE, an individual; ELAINE FISCHER, an individual; NANCY MARIE FLORES, an individual; EZEKIEL FLORO, an individual; LINDSEY ELIZABETH FODEN, an individual; SCOTT ANTHONY FREEMAN, an individual; LESLIE CAROL FRENCH-BAXTER, an individual; JEWEL SEAN YAHUT GENTRY, an individual; WENDY M. GIBBS, an individual; LINDA CAROL GILL, an individual; JOSHUA RAY GOBBELL, an individual; ELIZABETH ANN GOBLIRSCH, individually and as Trustee of THE ELIZABETH ANN GOBLIRSCH LIVING TRUST; ANDREW JONATHAN ASHWORTH, an individual; MARCOS G. GOMEZ LOPEZ, an individual; MICHAEL WARREN GOODE, an individual; SHARON SUZANNE GREENSTEIN, an individual; BRUCE KEVIN GREENSTEIN, an individual; AARON ALLEN

GREGG, individually and as Trustee of THE GREGG FAMILY TRUST; BONNIE J. GREY, an individual; PAUL RESE GRIFFIN, an individual; RAPHAEL ARMANDO GRIJALVA, an individual; MISTY DAWN GRIJALVA, an individual; JAMES ALLEN GULKIN, an individual; LYNN MICHELLE GULKIN, an individual; KAREN KIMBERLY HANLON SONNE, an individual; MICHAEL CHRISTOPHER HELTON, an individual; MARYANN VERONICA HERNANDEZ, an individual; CARMEN AYALA, an individual; THALIA HERNANDEZ, an individual; KAMERON HERRERA, an individual; KATHERINE L. HOLLANDER, an individual; JOHN SOTOMAYOR, an individual; LINDSEY A. SOTOMAYOR, an individual; MARGIE A. HOLLINGSWORTH, an individual; MICHAEL A. FINLEN, SR., an individual; LAURENCE PHILLIP HOLMES, an individual; DARRIN R. HOOVER, an individual; DAVID LLOYD HYLAND, an individual; ALEJANDRO IBARRA, an individual; ALEX DANIEL MICHAEL IBARRA, an individual; ALIAH DANIELLE IBARRA, an individual; DEANNA IBARRA, an individual; JAIME IRACHETA, an individual; ANDRES JACOBO BELLO, an individual; GUADALUPE S. JAIME, an individual; LISA JOANNA JARRETT, an individual; JEFFREY ALAN JELTEN, an individual; MELVIN R. JENKINS, an individual; MAUREEN S. JENKINS, an individual; GREGORY B. JOHNS, an individual; KEOCHAN KATHY JOHNSON, an individual; WILLIAM JOHN JOHNSON, an individual; YVONNE J. JOHNSON, an individual; CHRISTEN SUZANNE JONES, an individual; KARLA KONSTANCE JONES, individually and as Trustee of the JONES FAMILY TRUST; HOLLY ANNE KING, an individual; ALICIA KUHL, an individual; JOSHUA NAY, an individual; ERIC PRICE, an individual; JENNIFER LAWRENCE, an individual; ANTOINETTE YVONNE LECHTENBERG, an individual; LUCAS P. LITTLE, an individual; REBECCA JO LITTLE, individually and as Trustee of the TOM LITTLE LIVING TRUST; JOSEPHINE LOMBARDO, an individual; BELLA LUCIDO, an individual; GAETANO LUCIDO, an individual; MARIA LISA LUCIDO, an individual; PAOLO LUCIDO, an individual; MARYANNE LOMBARDO, an individual; FRANK V. LOMBARDO, an individual; VALENTINA MARIA LOMBARDO, an individual; VITTORIO ANTHONY LOMBARDO, an individual; REBECCA G. LOMELI, an individual; ANTHONY LOPEZ, an individual; RUBEN LOPEZ, an individual; CATHERINE

LOUISE, an individual; MARIA R. LOYOLA, individually and as Trustee of the LOYOLA FAMILY TRUST; MARILYN LYNDS, an individual; JAMES DISMUKES, an individual; GINA LOUISE MACIAS, an individual; LINDIE L. MALLORY, an individual; STEPHANIE DIANE MANGUS, an individual; LAWRENCE E. MANN, an individual; CATHERINE GRACE MARTIN, an individual; GABRIEL MARTINEZ, an individual; MANUEL RICHARD MARTINEZ, an individual; MARIA MERCEDES MARTINEZ, an individual; ROBERTO MARTINEZ, an individual; JENNIFER McCAHAN-FORD, an individual; JENNIFER KAY McCANN, an individual; MARCIE JO McKEARN, an individual; YESENIA MEDINA, an individual; PAUL BRANDEIS MELTZER, an individual; STEPHEN JOSEPH MENDES, an individual; DENISE MERCADO, an individual; GWENDOLYN M. MEYER, an individual; MICHAELA BARBARA MILLER, an individual; VICTORIA TORI MITCHELL, an individual; ANTHONY ANDREW MITHCELL, an individual; DALTON ANDREW MITCHELL, an individual; JANIKA MARLINA MOHAN, an individual; DEBRA ANN MONTANEZ, an individual; ALEX S. MORALES, an individual; SOCRRO S. MORALES, an individual; RAMON MORENO, an individual; CATE MULLIGAN, an individual; CARLOS EFREN MUÑOZ, an individual; MICAH T. MURPHY, an individual; EIREENE NEALAND, an individual; LOIS NIEUWSTAD, an individual; RICHARD OLER, an individual; AUGUST ARTHUR ORANGE, an individual; STEVEN SORIA ORNELAS, an individual; HUGH EDWARD PAINTER, an individual; DEREN PAINTER, an individual; MARIA MAGDALE GUEHASSE, an individual; ANTHONY KYLE LUKE, an individual; EMMANUEL DEREK MILLER, an individual; KATHEY OWENS, an individual; JANE RAYE PARKS-McKAY, an individual; RICHARD CHRISTOPHER PARRA, an individual; SKY SHAWN PAXTON, an individual; BEVERLY PAXTON, an individual; RONALD ITALO PELISSIER, an individual; KELLY PLESKUNAS, an individual; STANLEY PLESKUNAS, an individual; KENNETH SCOTT POLLARD, an individual; LAUREN E. RHODY, an individual; KEVIN AUBREY PRICE, an individual; ANTONIA CORTES RAMIREZ, an individual; JOSHUA BOWMAN, an individual; LARA KAY RANKIN, an individual; LISA RHODES, an individual; ERICA K. RILEY and RICHARD R. RILEY, individually and as Trustees of THE ESTATE OF RICHARD

AND ERICA RILEY; SALVADOR VENEGAS MARTINEZ, an individual; LINDA RIVAS, an individual; ALEJANDRO RIVERA, an individual; FRANK RODRIGUEZ, an individual; KEITH L. RODRIGUEZ, an individual; AMBER HEATHER MARIE RONE, an individual; PAULINE JACOBS ROSENTHAL, an individual; ANTHONY J. RUSSO, an individual; CHRIS MICHAEL RUTLEDGE, an individual; LAURIE SAGE, an individual; MELISSA SALAZAR, an individual; REBECCA SALAZAR, an individual; REYNALDO SALAZAR, an individual; MARTHA ALICIA SALDIVAR, an individual; MARIBELL S. SALINAS, an individual; JAMES SALISBURY, an individual; STARLETTE SANCHEZ, an individual; BARBARA SERENA SANCHEZ, an individual; CELIA SANCHEZ MAYES, an individual; SARAH JANE TOTEMOFF, an individual; DOUGLAS SANDERSON, an individual; NATALIE SANDERSON, an individual; JENNIFER IRENE WILLIAMSON, an individual; JACOB D. SANDERSON, an individual; JESSE ANTHONY SANDOVAL, an individual; JOHN DAVID SAVAGE, an individual; EMILY DAIGLE, an individual; EVA D. SCRUGGS, an individual; ALISON KATHLEEN SHANKLIN POZO, an individual; JUAN CARLOS POZO BLOCK, an individual; LISA R. SHIRK, an individual; MARK A. SHIRK, an individual; AURORE SIBLEY, an individual; ORION SIBLEY, an individual; RICHARD F. SORIA, individually and as Trustee of the RICHARD SORIA TRUST; KATHRYN ALEXIS STERN, an individual; BARBARA J. STOIK, an individual; KEVIN ELLIOTT GROSS, an individual; NIKKI LYNN STOKE, an individual; RONALD EARL SWIM, individually and as Trustee of THE RONALD AND NAM SWIM REVOCABLE LIVING TRUST; CRYSTAL VIOLET SWITZER, an individual; TIMOTHY YEARLEY, an individual; MIRIAM N. TAYLOR, an individual; PATRICIA M. THOMPSON, an individual; WILLIAM COLLINS, an individual; STEPHANY LOUISE THOMPSON, an individual; MONIKE TONE, an individual; MYRA NAVARETTE, an individual; ROBERT FRANK TORRES, an individual; PATRICIA K. TRAYER, individually and as Trustee of THE JP AND PK TRAYER FAMILY TRUST OF 1992; YUSVIVIA ESPANTOJA TREJO, an individual; KATHLEEN UCINSKI, an individual; PATRICIA VALDEZ, an individual; DAVID GUITIERREZ VARGAS, an individual; PAULA VASQUEZ, an individual; ZERRA RHAE VAUGHAN, an individual; SANDY ERICA VELA, an individual;

JOHN ALLEN VINSKY, an individual; HAYLEY VICTORIA WALKER, an individual; KIRK ADAM WALLIS, an individual; DANIELLE RENAY WALLIS, an individual; MATTHEW WEICBERGER, an individual; DEVELYN LOREAL WILHELM, an individual; DUQUE F. WILLIAMS, an individual; ERICA D. WILLIAMS, an individual; PHILIP SCOTT WILLIS, an individual; STEPHEN DALE WILLIS, an individual; JEFFREY L. WOOD, an individual; JENNIFER RUTH WRENNE, an individual; MERCY GRACE WRIGHT, an individual; RUSSELL WILLIAM CONSTABLE, an individual; and RAMONA ZARATE, an individual; ("Plaintiffs"), by and through undersigned counsel, and submit this Complaint against Defendants MOSS LANDING POWER COMPANY, LLC, a Delaware limited liability company; MOSS LANDING ENERGY STORAGE 3, LLC, a Delaware limited liability company; VISTRA CORP., a Delaware corporation; DYNEGY OPERATING COMPANY, a Texas corporation; VISTRA CORPORATE SERVICES COMPANY, a Texas corporation; GRANITE CONSTRUCTION COMPANY, a California corporation; LG ENERGY SOLUTIONS, LTD., a South Korean Company; LG ENERGY SOLUTION ARIZONA, INC., a Delaware stock corporation; LG ENERGY SOLUTION MICHIGAN, INC., a Delaware corporation; LG ENERGY SOLUTION VERTECH, INC., a Delaware Corporation; PACIFIC GAS AND ELECTRIC COMPANY, a California corporation and DOES 1 through 50, inclusive, and each of them ("Defendants"), and allege as follows:

## I. INTRODUCTION

1. On or about January 16, 2025, thermal runaway occurred within an energy battery system resulting in a devastating fire at the Moss Landing Power Plant site located at 7301 State Highway 1, Moss Landing, Monterey County, California 95039 (the "Vistra Fire"). Thermal runaway, a catastrophic process that can result in smoke, fire and explosions, cannot typically be stopped by firefighting techniques used to deprive a fire of oxygen. Here the Vistra Fire will be called a "fire," but it was in fact both a fire and a thermal runaway.

2. The Vistra Fire ignited within the 300-megawatt ("MW") "Phase I" portion of the Vistra Moss Landing Battery Energy Storage System ("BESS") Facility owned and operated by the Defendants (hereinafter "Moss Landing BESS" or the "Moss 300 BESS Building." The Vistra

Fire originated in the Moss 300 BESS Building, a contained and roofed building that housed an outdated and dangerous lithium-ion battery storage system. The fire spread rapidly and resulted in toxic emissions that jeopardized the health and safety of thousands of residents and businesses in the surrounding area.

3. The Moss Landing BESS used lithium nickel manganese cobalt oxide ("NMC") batteries that are more prone to thermal instability than newer alternatives like lithium-ion phosphate ("LFP") batteries. Because they are safer, most energy storage projects around the world have been transitioning to LFP batteries. NMC batteries undergo thermal runaway at a lower temperature and release more energy from decomposition, while LFP batteries can withstand higher temperatures than NMC batteries before beginning the thermal runaway process. That made the Defendants' use of a contained and roofed building to store NMC batteries much more dangerous.

4. After the Vistra Fire, Vistra employees reported that the fire suppression system at the Moss Landing BESS failed to work. Plaintiffs are informed and believe that the Moss Landing BESS had an outdated water-based heat suppression system, that is not effective in stopping thermal runaway or extinguishing lithium-ion fires. Plaintiffs are also informed and believe that the Moss Landing BESS contained too many lithium-ion batteries into one enclosed space and failed to use modular battery containers with proper controls and safety equipment.

5. By contrast, in September 2022, a fire broke out at the neighboring Tesla project, which used safer and less volatile LFP batteries that were stored outside (as 99% of all lithium-ion batteries are stored for safety reasons) and were in modular battery container (which the Defendants did not use at the Moss Landing BESS). That fire was quickly extinguished.

6. The Vistra Fire, which affected 50,000 to 100,000 people in the area, led to the declaration of a local state of emergency and required the evacuation of approximately 1,500 residents, closure of schools, major roads, and significant disruptions to daily life, commerce and agricultural operations. A plume of toxic smoke and particulate matter emanating from the fire spread across Monterey County and beyond, depositing ash, soot and other substances containing heavy metals, on the surrounding communities, farms and public and natural spaces. Subsequent

sampling revealed unusually high levels of toxic metals in soils a mile from the fire at levels 100 to 1,0000 times higher than normal.

7. The Defendants knew or should have known, when designing, constructing, maintaining, and otherwise operating the Moss Landing BESS that large thermal runaways, fires, and explosions at similar storage sites were a significant problem worldwide. Catastrophic fires and thermal runaways at BESS facilities have caused death, injury, and property damage. For instance, in 2018 similar energy storage systems in Korea received global attention due to the number of fires, which resulted in a five-month investigation, and lead to a country-wide suspended deployment of new energy storage systems. Additionally, the Moss Landing BESS suffered two previous fires, one in 2021 and one in 2022. Defendant VISTRA's own investigation of those fires highlighted the deficiencies of the fire suppression system at the Moss Landing BESS, yet no changes were made.

8. Plaintiffs are residents of communities surrounding the Moss Landing BESS who were directly impacted by this catastrophe. Plaintiffs were exposed to smoke, ash, particulate matter, and dangerous toxic chemicals, which led many to experience respiratory distress, eye and throat irritation, headaches and other health complications as set out here. Plaintiffs' property and property rights were also affected. Not only were the Plaintiffs unable to fully use and enjoy their properties, but some were also entirely displaced altogether due to the mandatory evacuations and dangerous conditions caused by the Vistra Fire. Plaintiffs' real and personal properties were covered by soot, ash, and toxic chemicals, including heavy metals, from the fire. Plaintiffs suffered, and will continue to suffer economic losses, including loss of income due to business closures, expenses associated with forced evacuations, as well as future environmental mitigation and remediation costs. They sue to recover compensatory damages for these harms.

## II. PARTIES

9. At all relevant times hereto, Plaintiffs are individuals and other legal entities who were/are homeowners, renters, residents, occupants, and had property and/or owned businesses in Monterey County in areas impacted by the Moss Landing BESS fire.

10. Plaintiffs have all suffered damages, losses, and harm from the Defendants' tortious

actions and inactions.

11. Plaintiffs have elected to join their individual lawsuits in a single action under rules of permissive joinder. Plaintiffs do not seek class certification or relief on any class-wide, collective, or other group basis, but seek the damages and other remedies identified herein on an individual basis according to proof at trial.

12. Defendant MOSS LANDING POWER COMPANY, LLC ("MOSS LANDING POWER CO LLC"), is a limited liability company organized and existing under Delaware law, with a principal address at 6555 Sierra Drive, Irving, TX 75039, and is registered to do business as a foreign limited liability company in California. On information and belief, MOSS LANDING POWER CO LLC had and continues to have a facility located at 7301 State Highway 1, Moss Landing, Monterey County, California 95039, the location of "the fire." MOSS LANDING POWER CO LLC is a wholly owned subsidiary of Defendant VISTRA CORP., and operates the Moss Landing Power Plant, including the Moss Landing BESS on behalf of Defendant VISTRA CORP.

13. Defendant MOSS LANDING ENERGY STORAGE 3, LLC, ("MOSS LANDING ENERGY STORAGE 3 LLC") is a limited liability company incorporated and existing under Delaware law with a principal address at 6555 Sierra Drive, Irving, TX 75039, and is registered to do business as a foreign limited liability company in California.

14. Defendant VISTRA CORP. is a publicly traded stock corporation incorporated and existing under Delaware law, with a principal address at 6555 Sierra Drive, Irving, TX 75039. VISTRA CORP. is the owner of the Moss Landing Power Plant, including the Moss Landing BESS facility.

15. Defendant DYNEGY OPERATING COMPANY ("DYNEGY OPERATING CO"), is a corporation incorporated and existing under Texas Law and is a foreign company authorized to do business in California, with a principal address at 6555 Sierra Drive, Irving, TX 75039. DYNEGY OPERATING CO is a wholly owned subsidiary of Defendant VISTRA CORP. and is likely a managing entity of Defendant MOSS LANDING POWER CO LLC.

16. Defendant VISTRA CORPORATE SERVICES COMPANY ("VISTRA CORP.

SERVICES CO") is a corporation incorporated and existing under Texas Law and is registered as a foreign corporation authorized to do business in California, with a principal address at 6555 Sierra Drive, Irving, TX 75039. VISTRA CORP. SERVICES CO is a wholly owned subsidiary of VITRA CORP. and is likely a managing entity of Defendant MOSS LANDING POWER CO LLC.

17. Defendants MOSS LANDING POWER CO LLC, MOSS LANDING ENERGY STORAGE 3 LLC; VISTRA CORP., DYNEGY OPERATING CO, and VISTRA CORPORATE SERVICES COMPANY are collectively referred to as "VISTRA DEFENDANTS." The VISTRA DEFENDANTS are a "public utility" under Public Utilities Code sections 216(a)(1), 216(c), and 218(a)(17).

18. Defendant GRANITE CONSTRUCTION COMPANY ("GRANITE") was, at all times relevant to this pleading, a California company authorized to do and doing business in California with its headquarters at 585 West beach Street, Watsonville, CA. GRANITE is a heavy civil construction contractor.

19. Defendant LG ENERGY SOLUTION, LTD. is a battery company headquartered in Seoul, South Korea. Upon information and belief, LG Energy Solutions, Ltd. supplied and installed the lithium-ion batteries at Moss Landing BESS.[1]

20. Defendant LG ENERGY SOLUTION ARIZONA, INC. is a stock corporation incorporated and existing under Delaware Law and registered as an out-of-state stock corporation authorized to do business in California, at the time of the Vistra Fire, LG ENERGY SOLUTION ARIZONA, INC., had a principal address at 2540 N. First Street, Stuie 400, San Jose, California 95131. On March 5, 2025, LG ENERGY SOLUTION ARIZONA, INC., filed a Statement of Information for Corporation changing the principal address to 335 E. Pecos Road, Queen Creek, Arizona 85140. Upon information and belief, LG ENERGY SOLUTION ARIZONA, INC. is a wholly owned subsidiary of Defendant LG ENERGY SOLUTION, LTD.

21. Defendant LG ENERGY SOLUTION MICHIGAN, INC. is a corporation

[1] LG Energy Solution and Vistra Corp. Celebrate the Installation of the World's Largest Battery Energy Storage System at Moss Landing Media Day Event (last accessed Jan. 31, 2025).

incorporated and existing under Delaware Law and registered to do business in California, with a principal address at 1 LG Way, Holland, MI 49423. Upon information and belief, LG ENERGY SOLUTION MICHIGAN, INC. is a wholly owned subsidiary of Defendant LG ENERGY SOLUTION, LTD.

22. Defendant LG ENERGY SOLUTION VERTECH, INC. is a corporation incorporated and existing under Delaware Law and registered to do business in California, with a principal address at 155 Flanders Road, Westborough, MA 01581. Upon information and belief, LG ENERGY SOLUTION VERTECH, INC. is a wholly owned subsidiary of Defendant LG ENERGY SOLUTION, LTD.

23. LG ENERGY SOLUTIONS, LTD., LG ENERGY SOLUTION ARIZONA, INC., LG ENERGY SOLUTION MICHIGAN, INC., and LG ENERGY SOLUTION VERTECH, INC., are referred to collectively as "LG DEFENDANTS."

24. Defendant PACIFIC GAS AND ELECTRIC COMPANY ("PG&E") was, at all times relevant to this pleading, a California corporation authorized to do and doing business in California with its headquarters at 300 Lakeside Drive, Oakland, California. At all times relevant to this pleading, PG&E acted to provide a utility, including electrical services, to members of the public in California, including residents of Monterey County. PG&E is one of the largest combination natural gas and electric utilities in the United States.

25. Residents and businesses in Monterey County and other places pay PG&E to provide electricity through a utility infrastructure, including a network of electrical transmission and distribution lines. PG&E is a "public utility" under Public Utilities Code sections 216(a)(1) and 218(a).

26. On information and belief, VISTRA DEFENDANTS planned, built, operated, and continue to operate the Moss Landing BESS facility along and in concert with the PG&E and others. VISTRA DEFENDANTS' and PG&E's acts and omissions, as more particularly described below, resulted in the Vistra Fire that harmed the Plaintiffs.

27. At all times relevant to this pleading, VISTRA DEFENDANTS and PG&E acted to provide a utility, including electrical services, to members of the public in California, including

residents of Monterey County. The VISTRA DEFENDANTS and PG&E used the lithium-ion batteries manufactured by the LG DEFENDANTS to store electricity as part of an electrical distribution system serving Central, Coastal, and Northern California for the benefit of the public.

28. The Moss Landing BESS is connected to PG&E through an interconnection facility ("IF") on site. As agreed, PG&E was responsible for the construction of the IF. Upon information and belief, PG&E also controls most of the Moss Landing BESS. For instance, PG&E is expressly authorized to: (1) control the type of equipment used at VISTRA'S Moss Landing facility; (2) review specifications for VISTRA's Moss Landing facility; (3) inspect VISTRA'S Moss Landing facility; (4) require installation of certain communications items at VISTRA'S Moss Landing facility; (5) dictate operations at VISTRA'S Moss Landing facility; and (6) set VISTRA'S minimum insurance coverage at the Moss Landing facility. Also, PG&E and VISTRA have agreed to indemnify, defend, and hold the other Party harmless from acts such as those alleged in the Complaint. PG&E's agreement with VISTRA further requires creation of a Joint Operating Committee to coordinate operating and technical considerations of Interconnection Service.

29. Comments by PG&E also reflect its close partnership with VISTRA. For example, PG&E stated it was "ushering in a new era of electric system reliability and delivering a vision into the future for our customers with the commissioning of the Vistra Moss Landing energy storage facility," adding "[p]rojects like this require great partners, such as Vistra, and PG&E will continue to seek out and work with the best and brightest to provide breakthrough clean energy solutions for our customers."

30. Upon information and belief, GRANITE worked in conjunction with the VISTRA DEFENDANTS as an integral part of the Moss 300 BESS Building retrofit, Moss 300 BESS design, Moss 300 BESS construction, and Moss 300 BESS battery installation.[2] GRANITE's scope of work included but was not limited to: structural updates, former cooling system abandonment, elevated concrete storage decks for battery modules, fire barriers, fire water

[2] https://www.graniteconstruction.com/newsroom/moss-landing-project-offers-flexible-power-solutions (last accessed March 27, 2025)

systems, electrical duct banks. [3]

31. LG DEFENDANTS are collectively one of the largest battery manufacturers in the world. In 2021, their revenues were $27.2 Billion.

32. The LG DEFENDANTS have one plant in Michigan and one joint venture with General Motors. They are building a $5.5 billion stand-alone battery manufacturing complex in Arizona. The LG DEFENDANTS are registered to do business in California. Plaintiffs are informed and believe that the LG DEFENDANTS directly and purposefully conducted business with the other Defendants in California by selling, distributing, delivering, designing, and installing the lithium-ion batteries at issue here to the other Defendants and coordinating and planning with them.

33. Defendants are each jointly and severally liable to the Plaintiffs for the damages Plaintiffs sustained as a direct and proximate result of Defendants' conduct, as alleged in this Complaint. Plaintiffs are informed and believe and thereon allege that each of the Defendants were, at all pertinent times, the agents, servants, employees, officers, directors, joint venturers, and/or partners, parents, affiliates, subsidiaries, successor-in-interests, related entities, of each of the other Defendants, and are each liable for their own actions and inactions.

34. At all times relevant to this pleading, Defendants, individually and/or jointly, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants; and were operating within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture; and each of Defendants has ratified and approved the acts of each of the remaining Defendants. Each of Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations and duties to Plaintiffs, as alleged here. In acting to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings alleged here, each of Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful

[3] *Id.*

conduct, wrongful goals, and wrongdoing or was willfully ignorant of those wrongdoings.

35. The names of other Defendants and/or their involvement in the events giving rise to the claims alleged herein are unknown to Plaintiffs. Plaintiffs, therefore, sue such Defendants by fictitious names, identified as DOES 1 through 50, inclusive. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of Defendants designated as DOES 1 through 50, inclusive, when their identities and/or involvement become known.

## III. JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

36. Venue is proper in Alameda County because the headquarters of PG&E is in Oakland, California, which is in Alameda County. Defendants also conducted business and owned and/or operated utility infrastructure in Alameda County. Plaintiffs are informed and believe, and thereon allege, that PG&E conducted business in Alameda County at the time it committed the negligent acts and omissions that give rise to this Complaint, and Alameda County is where the liability arises.

37. Code of Civil Procedure sections 395(a), 395.5, and 410.10 give this Court jurisdiction over this matter because Defendant PG&E is incorporated in California, has its headquarters in Oakland, California, resides in and does significant business in the County of Alameda, engages in most of its corporate activities in California, and maintains the majority of its corporate assets in California. Defendant GRANITE has its headquarters in Watsonville, California, transacts the majority of its business in California, and holds significant assets in California. In addition, the VISTRA DEFENDANTS reside in and do significant business in California, engage in significant corporate activities in California, and maintain significant corporate assets in California. Finally, the LG DEFENDANTS are licensed to do business in California and do business in California. These facts render the exercise of jurisdiction over Defendants consistent with the traditional notions of fair play and substantial justice.

38. The Alameda County Superior Court is a court of general jurisdiction and has subject-matter jurisdiction over this unlimited civil case, as well as personal jurisdiction over each of the Defendants.

/ / /

## IV. FACTS APPLICABLE TO ALL COUNTS

### A. Moss Landing Power Plant

39. The Moss Landing Power Plant, located in Moss Landing, California, was first designed as an electrical generation plant, and was once the largest powerplants in California with a generation capacity of 2560 MW, before its two large supercritical steam units were retired in 2016. Originally commissioned in 1950, the plant has evolved over the decades and currently operates as a natural gas-fired power station with a capacity of 1,060 megawatts. In recent years, it has expanded to include two separate battery energy storage facilities: the Vistra Moss Landing BESS, and the Elkhorn Battery Facility which is owned by PG&E. Moss Landing Power Plant is the world's largest commercial electric battery energy storage site.

40. VISTRA ENERGY acquired the Moss Landing Power Plant in 2018 and operates both the power generating plant and the Vistra Moss Landing BESS.

41. The Moss Landing BESS has power lines and interconnections that allow power to flow to far-away regions. The plant is also connected to local loads and the San Jose region by transmission lines.

42. The Moss Landing BESS facility is co-located with the Moss Landing Power Plant, in Moss Landing's industrial area, northeast of the Highway 1 and Dolan Road intersection. Adjoining the property to the north is PG&E'S electric transmission operations and maintenance headquarters, and to the south is Dolan Road and the Moss Landing Business Park. Moss Landing Harbor lies west of the property on the other side of Highway 1.

43. The Moss Landing BESS facility is situated close to residential, commercial, agricultural and public properties. Residential neighborhoods, including Moss Landing and portions of Elkhorn Slough, where thousands of residents live, are located within a two-mile radius of the facility. The facility is also adjacent to businesses and agricultural operations.

44. The Elkhorn Slough Reserve, a protected wetland area of ecological significance, is located less than one mile from the facility. The Reserve is home to diverse wildlife and serves as a vital recreational and educational resource for the community and visitors.

/ / /

45. Public institutions, such as the North Monterey County Unified School District campuses, are also situated within a short distance of the facility. The District serves more than 4,500 K-12 students, and covers a 70 square-mile area, including neighborhoods in Castroville, Prunedale, Moss Landing, Aromas and parts of Salinas, California.

46. The area surrounding the Moss Landing Facility includes critical transportation routes, including State Highway 1, which provides vital access to the region.

**B. The Vistra Moss Landing BESS Facility**

47. The Vistra Moss Landing BESS facility, located at 7301 State Highway 1, Moss Landing, Monterey County, California 95039, is a large-scale lithium-ion battery storage facility owned and operated by the VISTRA DEFENDANTS. Before the Vistra Fire, it had a capacity of 750/3,000 megawatt-hours ("MWh"), making it one of the largest energy storage sites in the world, and the largest one in California.

48. In 2018, VISTRA ENERGY announced plans for the energy storage system at the site of Moss Landing Power Plant, using the existing turbine building and existing interconnection from retired steam units 6 and 7, connecting to the 500 kV grid. VISTRA ENERGY expected the energy storage system to begin commercial operation by the end of 2020, pending receipt of approval from the California Public Utilities Commission (CPUC).

49. The Moss Landing BESS facility was built by the VISTRA DEFENDANTS, PG&E, GRANITE and others, in three phases.

50. Phase I (involved in the Vistra Fire) has a capacity of 300 MW/1,200 MWh, meaning that the system can discharge up to 300 megawatts (MW) of power at its peak, and can store 1,200 MWh of energy in total.

51. Construction of Phase I commenced in December 2019 and was completed in 2020. The Phase I project had three major components: a battery energy storage system; a power conversion system; and a substation. The substation would first receive energy from the electrical grid; next, the energy current was converted through the power conversion system; the energy was then stored within the battery energy storage until it was used during peak demand. When needed, stored energy was to be routed out from the batteries through the power conversion system and

substation and into the electrical transmission grid.

52. Phase I's battery storage consisted of thousands of LG JH4 lithium-ion battery cells manufactured, provided, and designed by the LG DEFENDANTS, contained in battery racks in two stories of the preexisting, enclosed and roofed turbine building.

**Figure 1: Indoor Battery Packs at Moss Landing BESS[4]**



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[4] News Release, Vistra Corp., August 19, 2021, https://investor.vistracorp.com/2021-08-19-Vistra-Completes-Expansion-of-Battery-Energy-Storage-System-at-its-Flagship-California-Facility#assets_43_196-3:10 (last accessed Feb. 4, 2025 at 9:35 am PST).

**Figure 2: Backside of Indoor Battery Packs at Moss Landing BESS[5]**



53. Phase I is dangerously unique as one of only 1% of lithium-ion storage facilities are indoors. The remaining 99% of lithium-ion storage facilities are outdoors. Placing a lithium-ion storage facility indoors, like the Defendants did at Phase 1, is dangerous, a fact that the Defendants knew or should have known.

54. The LG DEFENDANTS designed, sold and provided the NMC lithium-ion batteries used to store electricity for the VISTRA DEFENDANTS and Defendant PG&E. The stored electricity would then be sold to utility customers in Monterrey County and beyond.

55. The NMC batteries used at the Moss Landing BESS Facility, as all Defendants knew or should have known, were far more dangerous and volatile than LFP batteries, particularly when contained in enclosed spaces like at Moss Landing Phase I.

56. In fact, on September 4, 2021, nine months after coming fully online, Phase I

[5] News Release, Vistra Corp., August 19, 2021, https://investor.vistracorp.com/2021-08-19-Vistra-Completes-Expansion-of-Battery-Energy-Storage-System-at-its-Flagship-California-Facility#assets_43_196-3:10 (last accessed Feb. 4, 2025 at 9:35 am PST).

suffered an overheating incident with multiple the LG batteries.

57. The Moss Landing BESS facility connected to the power grid and began operating on December 11, 2020, with a capacity of 300 MW/1200 MWh. Defendants announced that Phase I was operational on January 6, 2021.

58. In their announcement, Defendants described Phase I as follows:

> Housed inside the power plant's completely refurbished former turbine building and spanning the length of nearly three football fields, Phase I of the battery system can power approximately 225,000 homes during peak electricity pricing periods. The system is made up of more than 4,500 stacked battery racks or cabinets, each containing 22 individual battery modules, which capture excess electricity from the grid, largely during high solar-output hours, and can release the power when energy demand is at its highest and solar electricity is declining, usually early morning and late afternoon.[6]

59. At that time, the VISTRA DEFENDANTS also thanked Defendant PG&E for the "strong working relationship" backed by long-term resource adequacy contracts, which had been approved by CPUC.

60. By August 2021, the Defendants had completed Phase II of the Moss Landing BESS, which included a 100-megawatt expansion, bringing the facility's total capacity to 400 MW/1,600 MWh, making it the largest of its kind in the world.

61. On August 19, 2021, VISTRA DEFENDANTS, LG DEFENDANTS, and Defendant PG&E along with federal, state, and local elected officials and business leaders attended the opening of the Moss Landing BESS Phase II as guests and speakers for a ribbon-cutting ceremony, news conference, and site tours.

62. Construction of Phase III was completed in May of 2023, and with another 350 MW/1,400 MWh brought the Moss Landing BESS facility's total capacity to 750 MW/3,000 MWh. Phase III, unlike Phase I, was constructed outside.

/ / /

---

[6] News Release, Vistra Corp., January 6, 2021, https://investor.vistracorp.com/2021-01-06-Vistra-Brings-Worlds-Largest-Utility-Scale-Battery-Energy-Storage-System-Online (last accessed Feb. 4, 2025 at 9:38 a.m. PST).

**C. Dangers of Utilizing NMC Lithium-Ion Batteries for Energy Storage.**

63. The Moss Landing BESS facility stores power using a lithium-ion battery system, using NMC technology from LG Energy Solutions. A system utilizing NMC batteries is more dangerous than a system utilizing LFP batteries.

64. LFP batteries, unlike NMC batteries do not contain cobalt, making them less prone to overheating, and thus less likely to experience thermal runaway.

65. Lithium-ion BESSs have the potential to pose a new and emerging threat to public health and safety. Lithium batteries can overheat, creating thermal runaway, causing fire and explosions, releasing hazardous materials in the form of toxic plumes and toxic runoff due to fire suppression tactics. Lithium-ion batteries will overheat, catch on fire, and even explode when they are damaged, improperly used, charged, or stored.

66. Thermal runaway is one of the primary risks related to lithium-ion batteries. It is a phenomenon in which the lithium-ion cell enters an uncontrollable, self-heating state. In ideal conditions, the heat can dissipate from the cell. But in thermal runaway, the lithium-ion cell generates heat at a rate several times higher than the rate at which heat dissipates from the cell.

67. Thermal runaway is a self-accelerating reaction that can occur when the battery is defective, overcharged, short-circuited, or physically damaged. Thermal runaway is the primary failure mechanism for lithium-ion batteries. When oxygen mixes with the toxic flammable gases, the battery cell may ignite, causing surrounding cells to do the same, leading to catastrophic conditions.

68. If the pressure within the cell reaches a critical point, the cell can rupture, releasing flammable gases and in some examples, projectiles at high speeds. These gases can combine with oxygen in the air and form an explosive mixture.

69. Lithium-ion battery fires generate intense heat and considerable amounts of gas and smoke. The gas released from BESSs is highly flammable and toxic. The type of gas released depends on the battery chemistry involved but typically includes gases such as hydrogen fluoride ("HF"), phosphoryl fluoride ("$POF_3$"), carbon monoxide ("CO"), carbon dioxide ("$CO_2$"),

hydrogen ("$H_2$"), methane ("$CH_4$"), ethylene ("$C_2H_4$"), ethylene oxide ("$C_2H_4O$"), and other hydrocarbons.

70. Massive quantities of water over an extended period is the only established means of preventing continuous thermal runaway in a lithium-ion battery. This can result in hazardous runoff.

71. Lithium-ion battery-related fires generate unique and highly toxic emissions compared to other types of fires. The release of toxic gases, such as HF and CO, is one of the most critical concerns in lithium-ion battery related fires. HF is especially dangerous, with an immediate danger to life or health (IDLH) concentration of 0.025 g/m (30 parts per million [ppm]) and a lethal 10-minute toxicity level (AEGL-3) of 0.0139 g/m (170 ppm). Acute exposure to HF can lead to severe respiratory damage, burns, and systemic toxicity. Other gases, including CO and HCN, have been detected in concentrations exceeding occupational safety thresholds, emphasizing the health risks.

72. Particulate matter (PM) released during lithium-ion battery-related fires contains harmful metals such as cobalt, aluminum, copper, lithium, manganese, nickel, and zinc. These metals can contaminate the surrounding environment, including soil and water. Ambient PM is linked to respiratory and cardiovascular diseases, and its inhalation represents a significant health risk. In addition, the release of polycyclic aromatic hydrocarbons (PAHs) poses long-term health concerns due to their carcinogenic nature.

73. Fires at facilities like the Moss Landing BESS raise concerns about potential environmental contamination. Toxic substances such as HF, CO, smoke, and fine PM can affect air quality and pose significant risks to nearby residents. Wet and dry deposition of the gases, chemicals, and heavy metals in these plumes, can infiltrate soil and water bodies, leading to further environmental degradations. Contaminants from the fire are persistent and pose long-term risks to ecosystems and public health.

/ / /

/ / /

/ / /

### D. The Vistra Fire and Its Immediate Impacts

74. On January 16, 2025, at or around 3:00 p.m., the Vistra Fire broke out at the 300-MW Phase I portion of the Moss Landing BESS facility. By 5:35 p.m., flames were reported on the roof of the facility. The fire burned through the night and flared up again the next day.

**Figure 3 – Moss Landing Lithium Battery Facility Fire**[7]



/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[7] Credit: CBS News Bay Area

**Figure 4 – Moss Landing Lithium Battery Facility Fire** [8]



75. Despite the presence of a built-in heat suppression system, the system failed to prevent thermal runaway in the battery system and the resulting fire spread uncontrollably.

76. The failure of the Moss Landing BESS's heat and fire suppression system significantly hindered efforts to contain the fire. Designed to prevent such catastrophic incidents, the system's malfunction, in conjunction with the facility design that placed thousands of batteries prone to thermal runaway close together in an enclosed space, allowed the fire to spread rapidly, causing extensive damage and releasing large quantities of smoke, ash and toxic emissions.

77. Firefighters faced significant challenges in addressing the blaze due to the unique hazards posed by lithium-ion battery fires. Lithium-ion batteries contain flammable electrolytes that, when overheated, can cause thermal runaway. Traditional firefighting methods, such as applying water or foam, were deemed ineffective because they can react with the chemicals in the batteries, producing toxic gases like HF or potentially causing explosions. Additionally, lithium-

[8] Credit: Monterey County

ion battery fires generate extreme heat and can reignite even after appearing extinguished, making them particularly difficult to control.

78. These conditions were exacerbated by the Defendants use of NMC batteries that are more volatile than newer alternatives LFP batteries as well as the batteries being stored in an enclosed structure as opposed to safer modular battery containers.

79. Responding firefighters did not engage the blaze directly due to the high risk of explosion and the toxicity of the emissions, opting instead to let the fire burn itself out over several days.

**Figure 5 – Moss Landing Lithium Battery Facility Fire[9]**



80. The Vistra Fire released significant amounts of smoke, PM, toxic gases, including HF, CO, and other hazardous compounds associated with lithium-ion battery combustion.

/ / /

[9] Credit: KPIX

81. The fire and the associated toxic chemical plume had a catastrophic effect on communities surrounding the facility, disrupting life and business.

**Figure 6 – Moss Landing Two-Mile Evacuation Zone**




82. On January 16, 2025, around 10:30 p.m., Monterey County authorities issued evacuation orders for approximately 1,200 to 1,500 residents in the Moss Landing and the Elkhorn Slough communities.

83. Residents were instructed to leave their homes immediately due to the toxic smoke emanating from the Moss Landing BESS. Additional evacuation orders were issued on January 17, 2025, at 8:00 a.m., expanding the evacuation zone to include areas within a two-mile radius of the Moss Landing BESS facility. These orders caused significant disruption to residents and businesses, forcing many to seek temporary shelter, arrange emergency accommodations, and incur unexpected expenses.

84. The North Monterey County Unified School District announced closures early on January 17, 2025, citing concerns over air quality and safety for students and staff.

/ / /

85. The Elkhorn Slough Reserve was closed from January 17-21, 2025, due to the evacuation order and subsequent potential risks from the Vistra Fire.

86. On January 16, 2025, residents in surrounding counties, including Santa Cruz and San Benito, were advised to stay indoors, close windows and doors, and turn off ventilation systems to minimize exposure to hazardous air. This advisory was reiterated on January 17, 2025, as smoke and toxic emissions persisted.

87. Due to safety concerns from toxic smoke and limited visibility, at or around 5:52 p.m. on January 16, 2025, officials closed State Highway 1. The Highway was not reopened until January 19, 2025, at 5:00 p.m. These disruptions significantly impacted commuters and transport-dependent businesses, leading to delays, rerouting of freight traffic, and compounding economic losses for local enterprises. The closures also heightened logistical challenges for emergency services and residents attempting to access essential resources.

88. Residents of nearby communities, including the Plaintiffs, were exposed to smoke and toxic emissions. Many experienced respiratory distress, eye and skin irritation, headaches, nose bleeds, and other physical symptoms due to the exposure.

89. Defendants knew or should have known of the significant risks posed by the storage and operation of large-scale lithium-ion batteries, including the potential for thermal runaway, catastrophic fires and toxic emissions.

90. Defendants failed to implement adequate safety measures, fire prevention protocols, and emergency response plans to mitigate the known risks associated with lithium-ion battery storage, causing substantial damage to the Plaintiffs.

91. As of the time of filing of this Complaint, local and state environmental agencies are still assessing the immediate and the long-term impacts of the Vistra Fire.

**E. Deposition of Heavy Metals Caused by the Vistra Fire**

92. Research scientists at San José State University's Moss Landing Marine Laboratories (MLML) have detected unusually high concentrations of heavy-metal nanoparticles

in marsh soils at Elkhorn Slough Reserve following the recent fire at the nearby Vistra Power Plant's lithium-ion battery storage facility.[10]

93. The media advisory stated that "[a]s part of a decade-long monitoring program of the Elkhorn Slough estuary … field surveys, conducted within a radius of approximately two miles from the power plant, measured a dramatic increase in marsh soil surface concentration (hundreds to thousand-fold) of the three heavy metals Nickel, Manganese and Cobalt. These nanoparticles are used in cathode materials for lithium-ion batteries, … "NMC" … , clearly connecting the occurrence of the heavy metals to airborne cathode material from the Vistra battery fire. These heavy metals will chemically transform as they move through the environments and potentially through the food web, affecting local aquatic and terrestrial ecosystems."[11]

94. Monterey County issued an update related to soil screening stating that "[p]reliminary soil screening of specific sites near the Moss Landing Vistra Power Plant Fire area was conducted by the California Department of Toxic Substances Control (DTSC) on January 24, 2025, in consultation with County of Monterey officials. DTSC personnel used an X-Ray Fluorescence Spectrometer (XRF) instrument to screen surface soils for heavy metals, specifically cobalt, nickel, copper, and manganese.[12] XRF Scans showed elevated levels of Cobalt, Nickel, Copper, and Manganese at all locations except XRF Site 3 where only Nickel and Copper and XRF 5 where Nickel was not detected."[13]

95. The County's preliminary XRF scans for Cobalt exceeded United States Environmental Protection Agency (EPA) carcinogenic target risk from inhalation screening levels

---

[10] San Jose State University, Media Advisory. January 27, 2025

[11] *Id.*

[12] Moss Landing Fire Update: Soil Screening Data Summary County of Monterey Health Department, Environmental Health Bureau January 31, 2025. Moss Landing Fire Update: Soil Screening Data Summary County of Monterey Health Department, Environmental Health Bureau January 31, 2025 | County of Monterey, CA (last accessed Feb. 3, 2025).

[13] DTSC has not thoroughly analyzed or validated these results, which should not be interpreted as final or conclusive.

for residential soil at XRF Sites 7 and 8; and XRF Sites 1, 2, 4, and 5 exceeded EPA noncarcinogenic target hazard index screening level for children in residential soil.[14,15]

96. Preliminary XRF scans for Nickel and Copper exceeded EPA carcinogenic target risk from inhalation screening levels for residential soil at XRF Site 8.[16]

97. Preliminary XRF scans for Manganese exceeded EPA noncarcinogenic target hazard index screening level for children in residential soil at XRF Site 8.[17]

98. Independent wipe testing of Plaintiff Schmidt's boat which was docked in slip B137 in Moss Landing Harbor, (upon which her family including minor children reside), showed elevated levels Aluminum, Cobalt, Copper, Lead, Lithium, Manganese, and Nickel.[18]

99. The levels of Cobalt in the wipe samples collected from Plaintiff Schmidt's boat are of significant concern, with a range of 68 to 580 µg/wipe reported from samples collected on January 29, 2025, twelve days after the Vistra Fire was contained.

100. Independent soil testing of Plaintiff Davidson's property located at 9150 Holly Hill Drive, Salinas, California, approximately 7.5-miles east of the Vistra Fire, showed elevated levels Aluminum, Copper, Lead, Lithium, Manganese, and Nickel.[19] Soil samples were collected on January 29, 2025, twelve days after the Vistra Fire was contained.

101. Independent wipe testing of Plaintiff Davidson's property showed elevated levels Aluminum, Cobalt, Copper, Lead, Lithium, Manganese, and Nickel.[20] Wipe samples were collected on January 29, 2025, twelve days after the Vistra Fire was contained.

102. The levels of Cobalt in the wipe samples collected from Plaintiff Davidson's property are of significant concern, with a range of 13 to 260 µg/wipe reported.

---

[14] Moss Landing Fire Update, *supra* note 7.
[15] Note: parts per million (ppm) = milligrams per kilogram (mg/kg).
[16] Moss Landing Fire Update, *supra* note 7.
[17] Moss Landing Fire Update, *supra* note 7.
[18] LA Testing Analytical Report, Moss Landing – Moss Landing Habor Slip B137 "Lady Munroe." January 31, 2025.
[19] LA Testing Analytical Report, Moss Landing – Moss Landing – 9150 Holly Hill Dr, Salinas. January 31, 2025.
[20] LA Testing Analytical Report, Moss Landing – Moss Landing – 9150 Holly Hill Dr, Salinas. January 31, 2025.

### F. Damages to Plaintiffs Caused by Defendants' Acts and Omissions

103. Defendants' tortious conduct has caused the Plaintiffs to suffer harm, injuries, and damages including, but not limited to, those identified below.

104. The fire resulted in the release of massive plumes of smoke, ash and toxic chemicals into the surrounding communities. Those exposed to these emissions have suffered, and continue to suffer from inconvenience, annoyance, and personal discomfort. That inconvenience, personal discomfort, and annoyance is including, but not limited to, nasal and eye irritation, difficulty breathing, headaches, nosebleeds, sore/scratchy throat, lung congestion, fatigue, runny nose/nasal drip, burning lungs, dizziness, shortness of breath, unexplained discharge of blood, sores, metal taste, inability to focus, unusual smells, lung irritation, and skin irritation. Many have sought medical help for their symptoms. Those with respiratory disorders have seen these conditions exacerbated.

105. In addition, Plaintiffs' mental health has been adversely impacted because by the injury to the peaceful enjoyment of the property that they occupied, and Plaintiffs have suffered fear, severe emotional distress, anxiety, and mental anguish.

106. Due to the fire, approximately 1,500 residents of Monterey County were abruptly ordered to evacuate from their homes. Some Plaintiffs were among these evacuees. Many have had to leave their homes for considerable periods of time. In addition to suffering the trauma and inconvenience associated with a sudden evacuation from their homes, Plaintiffs have incurred evacuation and alternative living expenses as well as cleanup costs.

107. With schools closing on January 17, 2025, parents were forced to take time off from work to care for their children, losing wages and/or having to use their vacation and sick time.

108. Plaintiffs that work in the areas affected by the fire and the chemical plume have been unable to work or derive income during the event and its aftermath.

109. Soot, ash, debris, PM, heavy metals and other substances from the fire deposited on real and personal property of the Plaintiffs, and have caused staining, damage to paint and exterior surfaces, soil, and contamination of HVAC systems, necessitating costly repairs, cleaning and remediation of the properties.

110. Plaintiffs have suffered and continue to suffer from heavy metal deposition from the fire onto their property.

111. Gardens, agricultural fields, and outdoor amenities were similarly impacted. Due to the hazardous nature of the chemicals associated with lithium-ion battery fires, soil testing will be required to assess and mitigate contamination. Those Plaintiffs with groundwater wells will require long-term groundwater testing and monitoring as the heavy metals that were deposited on structures, foliage, vehicles, etc. from the Vistra Fire can be redeposited via washing and precipitation to soil and can migrate through the soil causing groundwater contamination.

## V. CLAIMS ALLEGED

### A. Count I: Strict Liability for Ultrahazardous Activities (Against All Defendants)

112. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully set forth here.

113. The operation of a large-scale lithium-ion battery storage facility involves ultrahazardous activities that pose significant risks to public health and safety.

114. Operation of a large-scale lithium-ion battery storage facility, especially one utilizing NMC batteries which are more prone to catch fire, creates a high degree of risk to the surrounding community. As shown by the January 16, 2025, fire and chemical plume, even a small incident at the facility had the potential to result in widespread harm, including the release of toxic chemicals that endangered the health of thousands of residents in Moss Landing and other surrounding areas.

115. The harm caused by the lithium-ion battery fire includes severe health effects, property damage, and prolonged disruption to the lives and livelihoods of those affected.

116. Despite safety protocols and fire suppression systems, risks associated with the operation of a large-scale lithium-ion battery storage facility cannot be fully eliminated through the exercise of reasonable care. The inherent risks of chemical reactions, especially in NMC batteries, including thermal runaway, remain present even with the implementation of safety measures.

/ / /

117. Operation of a large-scale lithium-ion battery storage facility, that is enclosed and utilizes NMC batteries, near residential neighborhoods and businesses is not a common or appropriate activity. The Moss Landing BESS facility was near a densely populated area, increasing the potential harm to the community in the event of an incident.

118. While BESS facilities may serve a commercial purpose, the extreme danger posed by these facilities, as demonstrated by the catastrophic event on January 16, 2025, far outweighs any value it may provide to the community. The resulting health hazards, evacuations, business closures, and environmental damage underscore the ultrahazardous nature of Defendants' operations.

119. Because the operation of a large-scale lithium-ion battery storage facility is an ultrahazardous activity, Defendants are strictly liable for any harm proximately resulting from these activities.

120. As a direct and proximate result of Defendants' engagement in ultrahazardous activities, Plaintiffs suffered injuries, damages and losses, including, but not limited to, those damages previously described.

121. Accordingly, Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial, including, but not limited to, compensatory damages for medical care, pain and suffering, emotional anguish, injury to real and personal property, remediation costs, loss of income, relocation and evacuation expenses, and substantial interference with their use and enjoyment of their properties.

**B. Count II: Strict Product Liability**

**(Against All Defendants)**

122. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully set forth here.

123. Plaintiffs are informed and believe that the lithium-ion batteries designed, manufactured, and sold by the LG Defendants in this case were defectively manufactured, leading to thermal runaway and resulting in the Moss Landing BESS facility fire on January 16, 2025.

/ / /

/ / /

124. Plaintiffs are informed and believe that the lithium-ion batteries designed and sold by LG Defendants in this case were defectively designed, leading to thermal runaway and resulting in the Vistra Fire on January 16, 2025.

125. Plaintiffs are informed and believe that the lithium-ion batteries designed and sold by the LG DEFENDANTS were distributed without adequate instructions or warnings of the potential for harm for thermal runaway, resulting in the Moss Landing BESS facility fire on January 16, 2025.

126. Plaintiffs are informed and believe that the lithium-ion batteries designed and sold by the LG DEFENDANTS were substantially the same at the time of the fire as when they left LG's possession. Furthermore, Plaintiffs are informed and believe that the lithium-ion batteries were used or misused in a way that was foreseeable—they were placed in battery racks at the Moss Landing BESS facility to store electricity reserves for use during peak hours, per the facility design. Plaintiffs further are informed and believe that the manufacture and design of the lithium-ion battery was a substantial factor in causing the initial fire and subsequent harm experienced by Plaintiffs.

127. Plaintiffs are informed and believe that VISTRA DEFENDANTS collaborated with LG DEFENDANTS in the manufacture and design of the batteries responsible for the Vistra Fire. VISTRA DEFENDANTS purchased 110,000 batteries from LG DEFENDANTS for the Moss Landing BESS facility, and were in the unique position to both benefit from the creation of the Moss Landing BESS facility AND to influence the manufacturing and design of the batteries for the facility.

128. Plaintiffs are informed and believe that VISTRA DEFENDANTS collaborated with GRANITE, LG DEFENDANTS, Defendant PG&E and others in the defective facility design and construction of the Moss Landing BESS facility, which included stacking thousands of NMC lithium-ion batteries in racks in an enclosed space, without adequate heat shielding, nor fire safety mechanisms, leading to thermal runaway and the fire on January 16, 2025.

/ / /

/ / /

129. Plaintiffs are informed and believe that VISTRA DEFENDANTS failed to offer adequate warning to the general public regarding the dangers posed by a massive, enclosed NMC lithium-ion battery storage facility in a populated area.

130. Plaintiffs are informed and believe that Defendant PG&E collaborated with VISTRA and LG DEFENDANTS on the manufacture and design of the batteries responsible for the Vistra Fire, as well as the design and creation of the Moss Landing BESS facility.

131. Plaintiffs allege that Defendant PG&E failed to provide adequate warnings to the community regarding the risks of having a massive, enclosed NMC lithium-ion BESS facility in a populated area.

132. Defendant PG&E is the sole purchaser and distributor of the power stored at the Moss Landing BESS facility. As such, Defendant PG&E is in a unique position to financially benefit from the faulty LG batteries. PG&E was integral to the design and existence of the Moss Landing BESS battery storage facility, and had a substantial ability to influence the battery manufacturing and design and the facility design to ensure safety.

133. The risk of fire was reasonably foreseeable at an enclosed, massive battery storage facility. Lithium-ion batteries are well known to have issues with thermal runaway, resulting in ignition. In fact, the Moss Landing BESS facility has previously experienced at least two fires or "overheating" events since 2020.

134. Plaintiffs allege that they were injured by the defects in manufacturing and design when the batteries caught fire, spewing toxins and PM into the air, and that there were inadequate warnings regarding the risks of having a massive, enclosed BESS facility in a populated area.

135. It was reasonably foreseeable that in the event of a fire at the Moss Landing BESS facility, that residents in the surrounding area would be injured and their property would be damaged by toxins and particulate matter released from the fire. The risks of catastrophic fire did not outweigh the potential benefits.

136. Accordingly, Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial, including, but not limited to, compensatory damages for medical care, pain and suffering, emotional anguish, injury to real and personal property, remediation costs, loss

of income, relocation and evacuation expenses, and substantial interference with their use and enjoyment of their properties.

**C. Count III: Inverse Condemnation**

**(Against Vistra and PG&E Defendants Only)**

137. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully set forth here.

138. On January 16, 2025, Plaintiffs were the owners of real property and personal property in the area of the Moss Landing BESS facility.

139. Prior to and on January 16, 2025 the VISTRA DEFENDANTS and PG&E had each designed, constructed, installed, operated, controlled, used, and/or maintained the facilities, lines, wires, battery storage, and/or other electrical equipment within PG&E's and VISTRA's utility infrastructure, including the transmission and distribution lines in and around the location of Moss Landing, to provide electrical services to large swaths of the public.

140. Prior to and on January 16, 2025, Defendants knew that the battery storage and electrical equipment within PG&E's and VISTRA's electrical-utility infrastructure (as deliberately designed and constructed) could ignite a fire, go into thermal runaway, destroy property, and cause toxic chemicals to inundate the surrounding communities. Accordingly, VISTRA AND PG&E knew the risks and dangers of their electrical equipment and battery storage and the need for proper maintenance, upkeep, design, and battery choice.

141. These inherent risks were realized on January 16, 2025, when the Vistra Fire erupted, which resulted in the taking of Plaintiffs' real property and/or private property.

142. This taking was legally and substantially caused by Defendants' actions and inactions in designing, constructing, installing, operating, controlling, using, and/or maintaining the facilities, lines, wires, battery storage, and/or other electrical equipment within PG&E's and VISTRA's utility infrastructure.

143. Plaintiffs have not been adequately compensated, if at all, for this taking.

144. Plaintiffs also seek, under Code of Civil Procedure section 1036, to recover all reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, incurred because of this proceeding in the trial court and/or in any appellate

proceeding in which Plaintiffs prevail on any issue.

**D. Count IV: Negligence**

**(Against All Defendants)**

145. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully stated here.

146. As operators large-scale lithium-ion battery storage facility, Defendants, who have superior knowledge of the dangers associated with lithium-ion battery fires, owed the Plaintiffs a non-delegable duty to conduct their operations in a safe manner, including a duty to design, maintain and operate their Moss Landing BESS facility safely, in a manner that protected the public, including the Plaintiffs, from chemical exposure and environmental hazards.

147. Defendants' duties included but were not limited to a duty to ensure proper safety protocols, fire prevention measures, and storage and handling procedures to mitigate the risk of chemical reactions, explosions and harmful emissions of toxic substances.

148. Defendants knew or should have known that NMC batteries can overheat, creating thermal runaway, can cause fire and explosions, and can cause releases of hazardous materials in the form of toxic plumes.

149. Defendants knew or should have known that NMC batteries were prone to fires.

150. Defendants knew or should have known that storing NMC batteries in an enclosed structure was dangerous.

151. Defendants breached duties owed to the Plaintiffs by, among other things:

a. Failing to design, operate, maintain, and/or repair their Moss Landing BESS facility in such a way as to ensure its safe and proper operation;

b. Failing to monitor and mitigate risks associated with NMC lithium-ion battery storage;

c. Failing to implement adequate safety protocols to prevent overheating and fires;

d. Failing to maintain a functional fire suppression system;

e. Failing to construct a functional/sufficient fire suppression system;

f. Falling below industry standards in designing, constructing, and operating a BESS.

g. Failing to ensure proper procedures or systems for timely identifying any malfunctions or limitations of the facility's fire suppression system;

h. Failing to ensure proper safety procedures in the event of a fire suppression system malfunction;

i. Failing to prevent runaway chemical reactions at their facility;

j. Failing to warn Plaintiffs and the public of the risks associated with the facility;

k. Igniting large volumes of chemicals in such a way that tens of thousands of people were likely to be exposed; and

l. Any other negligent acts and/or omissions which may be discovered and proven at the trial of this matter.

152. As the direct and proximate result of the Defendants' negligence, significant quantities of ash, soot, smoke and toxic chemicals were released into the surrounding communities and harmed the Plaintiffs.

153. The harm to the Plaintiffs was reasonably foreseeable.

154. Plaintiffs have suffered injuries, damages and losses, including, but not limited to, those damages previously described. Such harms were unique to each Plaintiff and different from damages suffered by other Plaintiffs.

155. Accordingly, Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial, including, but not limited to, compensatory damages for medical care, pain and suffering, emotional anguish, injury to real and personal property, loss of income and relocation and evacuation expenses.

**E. Count V: Private Nuisance**

**(Against All Defendants)**

156. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully stated here.

157. Plaintiffs are in lawful possession of their property.

158. Defendants owned, constructed, designed, maintained, operated, and otherwise controlled the Moss Landing BESS facility.

/ / /

159. Defendants' negligent, reckless, intentional and/or abnormally dangerous actions and inactions created conditions and/or permitted conditions to exist that were harmful to health, offensive to the senses, obstructed and/or entirely prevented free use of property, as to substantially interfere with the comfortable use and enjoyment of property by persons of ordinary sensibilities.

160. These conditions, including, but not limited to, soot, smoke, ash, debris, particulate matter, and other toxic chemicals materially and significantly interfered with Plaintiffs' right of use and quiet enjoyment of their property in a way unique to each Plaintiff.

161. Plaintiffs' enjoyment of life and property has been rendered materially uncomfortable and annoying. As the result of the fire Plaintiffs were subjected to noxious fumes, toxic chemicals, and unsafe air quality, which rendered their homes and properties unfit for occupancy and use.

162. Those exposed to these emissions have suffered, and continue to suffer damages from inconvenience, annoyance, and personal discomfort. That inconvenience, personal discomfort, and annoyance is including, but not limited to, nasal and eye irritation, difficulty breathing, headaches, nosebleeds, sore/scratchy throat, lung congestion, fatigue, runny nose/nasal drip, burning lungs, dizziness, shortness of breath, unexplained discharge of blood, sores, metal taste, inability to focus, unusual smells, lung irritation, and skin irritation. Many have sought medical help for their symptoms. Those with respiratory disorders have seen these conditions exacerbated.

163. In addition, Plaintiffs' mental health has been adversely impacted because by the injury to the peaceful enjoyment of the property that they occupied, and Plaintiffs have suffered fear, severe emotional distress, anxiety, and mental anguish.

164. At no time did the Plaintiffs consent to the Defendants' actions and inactions in creating these conditions.

165. As a direct and proximate result of the Defendants' creation of the nuisance, Plaintiffs have suffered injuries, damages and losses. Such harms were unique to each Plaintiff and different from damages suffered by other Plaintiffs.

/ / /

166. Accordingly, Plaintiffs each seek damages to be determined, on an individual basis, according to proof at trial, including, but not limited to compensatory damages for injury to property and interference with its use and enjoyment, and damages for physical discomfort, loss of peace of mind, unhappiness and annoyance caused by the nuisance.

**F. Count VI: Trespass To Real Property and Chattel**
**(Against All Defendants)**

167. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully set forth here.

168. Plaintiffs are in lawful possession of their properties.

169. As a result of the conduct and activities of the Defendants, contaminants from the fire have and continue to physically intrude onto and wrongfully enter Plaintiffs' properties, thereby interfering with the Plaintiffs' possessory interests in their properties without Plaintiffs' permission.

170. The physical intrusion of the contaminants emitted by Defendants onto and into the Plaintiffs' properties has physically injured and damaged Plaintiffs' properties by contaminating the soil, fixtures, structures and other physical aspects of Plaintiffs' properties. Also, Defendants' trespass to Plaintiffs' personal property physically injured and damaged Plaintiffs' personal properties by contaminating the properties, fixtures, structures, and other physical aspects of Plaintiffs' personal properties This would not have occurred but for the actions of the Defendants.

171. The physical intrusion of the contaminants onto and into the properties owned by the Plaintiffs diminished the value of Plaintiffs' real properties.

172. The trespass caused Plaintiffs to suffer, and continue to suffer, from inconvenience, annoyance, and personal discomfort. That inconvenience, personal discomfort, and annoyance is including, but not limited to, nasal and eye irritation, difficulty breathing, headaches, nosebleeds, sore/scratchy throat, lung congestion, fatigue, runny nose/nasal drip, burning lungs, dizziness, shortness of breath, unexplained discharge of blood, sores, metal taste, inability to focus, unusual smells, lung irritation, and skin irritation. Many have sought medical help for their symptoms. Those with respiratory disorders have seen these conditions exacerbated.

/ / /

173. In addition, Plaintiffs' mental health has been adversely impacted by the injury to the peaceful enjoyment of the property that they occupied, and Plaintiffs have suffered fear, severe emotional distress, anxiety, and mental anguish.

174. Defendants' trespass was the actual and proximate cause of the Plaintiffs' damages and losses including, but not limited to, diminution of the value and marketability of their properties and their property rights; the loss of use of their properties; the loss of use and enjoyment of their properties; and discomfort, inconvenience and annoyance. Defendants are thus liable for the compensatory damages to the Plaintiffs, to be determined on an individual basis, according to proof at trial.

**G. Count VII: Civil Battery**

**(Against All Defendants)**

175. Plaintiffs adopt and incorporate Paragraphs 1-111 as if fully set forth here.

176. The release of the harmful chemicals from the Moss Landing BESS fire caused exposure and therefore harmful and offensive contact with the Plaintiffs.

177. Defendants knew or should have known that the chemicals released from the lithium-ion battery fire were substantially certain to cause bodily contact, injury, damage, or harmful and offensive contact with the Plaintiffs.

178. Plaintiffs did not consent to the bodily contact, injury, damage, or harmful and offensive contact.

179. Defendants' conduct that caused the harmful and offensive contact was intentional, or at least grossly or culpably negligent conduct, or wanton and reckless conduct. Defendants' unauthorized contact has actually and reasonably offended a sense of personal dignity of the Plaintiffs.

180. As a direct and proximate result of Defendants' battery, Plaintiffs have suffered damages.

181. Defendants are thus liable for the compensatory damages to Plaintiffs, to be determined, according to individual proof at trial, as well as nominal and punitive damages.

/ / /

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

a. For compensatory damages in an amount to be proven at trial;

b. For punitive damages sufficient to deter future misconduct;

c. For an award of attorneys' fees and costs;

d. For pre- and post-judgment interest as allowed by law; and

e. For such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 9, 2025

**SINGLETON SCHREIBER, LLP**

By: /s/ Knut S. Johnson

Knut S. Johnson (SBN 125725)
Marianna Sarkisyan (*Pro Hac Vice*)

*Attorneys for Plaintiffs*